UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LEE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:08CV38 LMB |
| | ) |
| STATE OF MISSOURI, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (Registration no. #38192), an inmate at Southeast Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $25.24. See 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the

greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $126.18, and an average monthly balance of $41.29. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $25.24, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action fails to

state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**The Complaint**

Plaintiff brings this action alleging what he purports to be violations of his civil rights. Specifically, plaintiff invokes the jurisdiction of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., and moves the Court to "declare § 562.046.1 RSMo. (2000) is unconstitutional and in violation of Article VI, Section 2 of the Supremacy Clause and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution for the reason that as it was applied to petitioner...it deprived petitioner his right to present a complete defense." In his request for relief, plaintiff seeks a declaration that § 562.046 is "unconstitutional and invalid as it was applied to your petitioner..." In order to discern the substance of plaintiff's allegations, it is necessary to review plaintiff's criminal case.

On November 11, 2001, following a jury trial in the Circuit Court for the County of St. Louis, Missouri, plaintiff was convicted of one count of first-degree murder, one count of first-degree assault, and two counts of armed criminal action, stemming from his actions on December 29, 1988, when he and Nathaniel Young went to the home of Pat Fowler and shot and killed Patricia Shephard and shot and wounded Jesse Snider. The facts, as adduced at plaintiff's criminal trial and summarized by the Missouri Court of Appeals, are as follows:

> On the evening of December 29, 1988, Jesse Snider and his girlfriend, Pat Shephard, were staying at the home of Pat and Charles Fowler, who lived at the residence. Pat Fowler sold crack cocaine and informed Snider that she was preparing to leave because sometime around midnight the police were suppose [sic] to raid her house. Fowler left leaving Snider and Shephard behind.
>
> At some point that evening, Snider and Shephard were preparing to leave the house when a woman came to the house looking for Fowler. Snider allowed her inside, and when she was leaving Snider observed defendant, who formerly dated Shephard, and Nathaniel Young approaching the house. He allowed them inside the house because he believed they were associates of Fowler's and felt they had business with her. Upon their entry, Snider shut the door and locked it. He turned and bumped into defendant, who had a pistol drawn on Snider. Snider and defendant exchanged words while Young went upstairs and came down with a pistol on Shephard. Defendant indicated to Snider that Shephard had snitched on him to the police, and that Snider was involved because he was with her.
>
> Defendant and Young marched Snider and Shephard upstairs with pistols on them to Fowler's bedroom and lined them up. Young attempted to level his pistol on Shephard as she tried to fight it off. The

pistol discharged, and all the lights in the house went off briefly. Defendant and Young marched Snider and Shephard back downstairs and lined them up in the living room. Defendant told Young to kill Shephard, and Young shot her in the head. Defendant then told Young to make sure she was dead, and Young shot her two more times. Defendant then shot Snider once in the mouth and once in the neck. Snider played dead, and defendant and Young left. Snider went across the street to the home of Shephard's mother. Although no one allowed him into the home, an ambulance was called, and Snider identified defendant and Young as his shooters.

In March of 1992, Nathaniel Young was acquitted of first degree murder in the fatal shooting of Shephard, but convicted of assault and armed criminal action for his part in the events in December of 1988. Snider testified at Young's trial that just before he was shot by plaintiff, he saw Young shoot Shephard. But Snider's testimony in this regard was contradicted by statements he made in the aftermath of the shootings wherein he told detectives who questioned him that plaintiff had killed Shephard.

At plaintiff's trial, Jesse Snider again testified for the State. He testified that plaintiff and Young entered Fowler's home on the night in question, that plaintiff directed Young to kill Shephard, that Young shot Shephard three times, and that plaintiff shot him in the face. Plaintiff testified in his own defense. He stated that, on the night of the crimes, Shephard summoned him to Fowler's house and that, upon arrival, he noted that Snider was present and appeared to be high on drugs. Plaintiff

further testified that Snider argued with Shephard, hit her and shot her three times, following which plaintiff struggled with Snider for control of the gun and shot him twice in self-defense.

In the instant complaint, plaintiff asserts he was denied a fair trial when he was precluded from entering evidence, pursuant to Missouri Revised Statute § 562.046[1], that Young had been acquitted of the murder of Shephard. Plaintiff argues that the state was unlawfully allowed to relitigate the issue of Young's guilt at plaintiff's trial, knowing that Young had been acquitted. He asserts that his best defense was to present Young as a defense witness to testify that he was acquitted of the murder of Pat Shephard or at the minimum, to be able to inform the jury of this fact. Plaintiff

---

[1]Section 562.046 of the Missouri Revised Statutes details defenses precluded in criminal actions. It states:

> It is no defense to any prosecution for an offense in which the criminal responsibility of the defendant is based upon the conduct of another that
>
> (1) Such other person has been acquitted or has not been convicted or has been convicted of some other offense or degree of offense or lacked criminal capacity or was unaware of the defendant's criminal purpose or is immune from prosecution or is not amenable to justice; or
>
> (2) The defendant does not belong to that class of persons who was legally capable of committing the offense in an individual capacity.

argues that because the Court refused him the ability to proffer this argument, his conviction rests solely on the erroneous assumption that Young was guilty, as under the instructions given to the jury, plaintiff could only be guilty if Young was.[2]

---

[2]According to plaintiff, the following instruction was given to the jury:

> A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about December 29, 1988, in the County of St. Louis, State of Missouri, Nathaniel Young caused the death of Pat Shephard by shooting her, and
>
> Second, that Nathaniel Young knew or was aware that his conduct was practically certain to cause the death of Pat Shephard, and
>
> Third, that Nathaniel Young did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,
>
> then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>
> Fourth, that with the purpose of promoting or furthering the death of Pat Shephard, the defendant aided or encouraged Nathaniel Young in causing the death of Pat Shephard and did so after deliberation, which means cool reflection on the matter for any length

Plaintiff filed a similar action in Missouri State Court in December of 2006 which was summarily denied. Although plaintiff filed an appeal before the Missouri Court of Appeals, he withdrew the appeal prior to the Court's ruling.

In March of 2005, plaintiff filed a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 in this Court, which was denied on February 12, 2008. See Jones v. Dwyer, No. 4:05CV510 CDP. Plaintiff did not raise the instant argument in his habeas petition.

**Discussion**

Before a federal court may issue a declaratory judgment, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, requires that there be "a substantial controversy between parties having adverse legal interests." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985); see also, Lake Carriers' Association v. MacMullan, 406 U.S. 498, 506 (1972) (present continuing actual controversy requisite). In the present case, plaintiff has failed to show that an actual controversy exists. Plaintiff

---

of time no [sic] how brief,

then you will find the defendant guilty under Count I of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

appears to be arguing that past judicial conduct - the trial court's enforcement of Missouri Revised Statute § 562.046 to suppress evidence at his criminal trial - has violated his constitutional rights. He does not argue that "such conduct has continued or will be repeated in the future." Emory, 756 F.2d at 1552. In effect, he is seeking to use the Declaratory Judgment Act to appeal his criminal conviction. This he may not do.

A state prisoner is not entitled to seek a declaratory judgment determination from the federal courts under 28 U.S.C. § 2201 as to the validity of the judgment under which he is confined. See, e.g., Waldon v. State of Iowa, 323 F.2d 852 (8th Cir. 1963); Christopher v. State of Iowa, 324 F.2d 180 (1963); Shannon v. Sequeechi, 365 F.2d 827, 829 (10th Cir. 1966)("The [Declaratory Judgment] Act does not provide a means whereby previous judgments by state or federal courts may be reexamined, nor is it a substitute for appeal or post conviction remedies."). If the restraint in which he is held is constitutionally invalid, the federal courts have the power to release him therefrom in habeas corpus, after exhaustion by him of such state remedies as are available to him. He cannot resort to a federal declaratory judgment suit in an effort to escape having to exhaust available state remedies and to circumvent the intent manifested by Congress in 28 U.S.C. § 2254 that the state

courts are to be given "the opportunity to pass upon and correct errors of federal law in the state prisoner's conviction." Fay v. Noia, 372 U.S. 391, 438 (1963).

Any declaratory decree that the judgment here involved was invalid, because plaintiff had improperly been deprived of a right to a fair trial, would be in fact a review of the judgment and in effect a revision of it, since its adjudicatory reach is against the judgment itself. Such review is limited to the habeas sections of Title 28 of the United States Code, which plaintiff has already pursued. See, e.g., Calderon v. Ashmus, 523 U.S. 740, 747 (1998) ("The disruptive effects of [a declaratory] action...are peculiarly great when the underlying claim must be adjudicated in a federal habeas proceeding.")

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $25.24 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 7th day of May, 2008.

/s/ Rodney W. Sippel
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE